Filed 11/14/23  P. v. Olivares CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097068 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE018267) |
| v. | |
| MANUEL OLIVARES, | |
| Defendant and Appellant. | |

A jury found defendant Manuel Olivares guilty of committing five sexual offenses against a victim under the age of 14 years.  Defendant appeals, arguing we should reverse his convictions because:  (1) his trial counsel performed ineffectively, violating defendant's right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, by not objecting to hearsay evidence about DNA analysis; (2) the trial court abused its discretion by preventing defendant from introducing evidence of a motive for the victim's family to fabricate her allegations; and (3) his trial counsel also performed ineffectively by failing to object to the prosecutor's remarks in

1

closing argument about the victim's lack of motive. We conclude defendant has failed to establish ineffective assistance of counsel and has failed to establish a prejudicial abuse of discretion. Accordingly, we will affirm defendant's convictions.

## I. BACKGROUND

Defendant lived in a house with nine other family members, including the victim. At trial, the victim testified that defendant put his penis into her anus on more than five occasions, made her lick his penis on three occasions, put his fingers in her anus on three occasions, licked her anus on one occasion, and touched her buttocks with his hands on approximately 10 occasions. The victim specifically recalled the final incident before she reported the abuse to her mother: Defendant grabbed her by the wrist and brought her into the defendant's parents' bedroom, took off her pants and underwear, threw her on the bed, took off his own clothes, positioned her with her buttocks lifted off the bed, and then moved his penis in and out of her anus while holding her hips so that she could not move. She told him to stop, but he did not stop until he was breathing heavily and announced he was tired. After defendant stopped, the victim could see "[w]ater was coming out" of his penis. After each incident, defendant would threaten to kill the victim if she told anyone about the abuse.

The day of the final incident, the victim told her mother that defendant had grabbed her buttocks. Her mother took her to the doctor the next day. Police officers were called to the doctor's office and interviewed the victim in a mix of Spanish and English. The victim told the officers that her uncle hurt her by grabbing her buttocks, inserting his fingers and then penis into her anus, and inserting his penis into her vagina. The victim then stated another incident occurred a month earlier, but did not tell the officers any details of that incident. The officer who questioned the victim was not a trained forensic interviewer and expected such an interviewer to talk with the victim more extensively later. After the interview, the officers brought the victim to a forensic sexual examination.

2

Dr. Angela Vickers performed a forensic sexual examination of the victim and found no injuries or sexually transmitted diseases. Dr. Vickers also collected samples from the victim's mouth, neck, nipples, genitals, and anus to be tested for bodily fluids. Police collected the victim's underwear and bedsheets from defendant's bed and his parents' bed for testing.

Analysts from the Sacramento County Crime Lab tested the samples taken from the victim's body, underwear, and from the bedsheets for bodily fluids and attempted to create DNA profiles from the fluids found. Of all the samples, only the one taken from the bedsheet from defendant's parents' room contained bodily fluid from which the analysts were able to develop a DNA profile. As explained in greater detail below, the analysis determined the sperm found on the sample from the bedsheet very likely came from defendant.

The prosecution charged defendant with committing five separate lewd or lascivious acts against the victim, a child under the age of 14 years, by force or fear of immediate and unlawful bodily injury (Pen. Code,[1] § 288, subd. (b)(1)). Defendant testified at trial that he got up on the day of the final incident described by the victim, went to breakfast with his wife, then took a nap for three or four hours. When he woke up, he danced with the victim in his parents' bedroom. They were initially separated while dancing, but when the victim started getting closer to defendant, he pushed her away because he felt uncomfortable. He thought it was easier to push her away than to tell her to back up. At first, defendant testified that he had only pushed the victim. But, after being reminded of statements he made to the police the day after the incident, defendant admitted that, after he pushed the victim to the ground, he then held her on the

---

[1] Undesignated statutory references are to the Penal Code.

3

ground to get her to stop getting close to him. Defendant denied any sexual contact with the victim.

The jury found defendant guilty of committing all five lewd or lascivious acts against the victim. The trial court sentenced defendant to 30 years in state prison. Defendant timely appealed.

## II. DISCUSSION

A.  *Ineffective Assistance for Failing to Object to Testimonial Hearsay Evidence*

Defendant first contends his trial counsel performed ineffectively by failing to object when Joy Viray, a DNA analyst from the Sacramento County Crime Lab, testified about the contents of reports prepared by Michelle Chao, another DNA analyst from the Sacramento County Crime Lab. Specifically, defendant contends his counsel should have objected because Viray's testimony about the contents of Chao's reports was inadmissible hearsay and violated defendant's right to confront the witnesses against him. We conclude defendant's counsel could have reasonably decided not to object to Viray's testimony on either ground. Accordingly, defendant has failed to establish ineffective assistance of counsel.

1.  *Factual Background*

The specific testimony defendant contends his counsel should have objected to is Viray's agreement with the conclusion of one of Chao's reports—that the sperm found on the bedsheet from the defendant's parents' bed, where some of the abuse occurred, was very likely to be defendant's. That sample had been identified as possible semen by Desiree Dudley, another DNA analyst at the Sacramento County Crime Lab. Dudley selected areas of the bedsheet that appeared to contain semen, performed a test for a chemical found in large quantities in semen, and looked at the samples that tested positive under a microscope to confirm the presence of sperm cells. She then packaged the samples containing sperm cells for DNA testing.

4

Chao performed the DNA testing, adding chemicals and heat to extract DNA molecules, isolating part of the DNA to develop a profile, and using software to help interpret the profile. The software determined the DNA profile developed from the sperm on the bedsheet was 7 octillion times more likely to come from defendant than from a random unrelated individual. There was no female contributor in the sample. Chao completed a lab report documenting the testing she performed.

The prosecution moved Chao's report on the bedsheet sample into evidence, and defense counsel did not object.

2. *Legal Background*

"[A] defendant cannot automatically transform a forfeited claim into a cognizable one merely by asserting ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 121, fn. 14; see *People v. Riel* (2000) 22 Cal.4th 1153, 1202-1203.) Rather, "[t]o establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

"[R]arely will an appellate record establish ineffective assistance of counsel." (*People v. Thompson*, *supra*, 49 Cal.4th at p. 122.) " 'When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel. "If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' [citation], the contention must be rejected." ' " (*People v. Samayoa*, *supra*, 15 Cal.4th at p. 845.)

5

*3. Analysis*

Defendant argues his counsel performed ineffectively by failing to object to Viray's testimony identifying defendant's DNA in the semen from the bedsheet because: (1) the testimony would have been excluded as inadmissible hearsay and (2) admitting the conclusion of Chao's report without permitting cross-examination of Chao violated defendant's right to confront the witnesses against him. The People respond that (1) the report was properly admitted under the business records exception to the hearsay rule, (2) the evidence was not testimonial hearsay protected by the right to confrontation, and (3) in any event, defense counsel could have "made a reasonable tactical decision not to object." We agree with the People's final contention, so we need not decide whether the report would have been admissible or was testimonial.

The parties have not identified any evidence in the record explaining defense counsel's decision not to object on either hearsay or confrontation grounds, so we must determine whether defense counsel could have no satisfactory explanation for the decision. Here, objecting to Viray's testimony about the conclusion of one of Chao's reports would likely not have benefited defendant. Chao was included on the prosecution's witness list, and nothing in the record indicates she would have been unable to testify if called. If Chao had testified about the findings of her analysis, the results would not have been hearsay. (See Evid. Code, § 1200, subd. (a) [hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing"].) Accordingly, defense counsel could have decided not to waste time further substantiating DNA testing he planned to downplay. Defense counsel may even have preferred to have Dudley testify, though Dudley was not on the prosecution's witness list, because Dudley was the DNA analyst who located and selected the bedsheet sample, whereas Chao just performed a standard test on the sample and recorded the output of the software. Despite the opportunity to question Dudley about the subjective decisions she made, defense

6

counsel declined to cross-examine her, suggesting he likewise would have had nothing to gain by cross-examining Chao about her more routine work.

Defense counsel may also have determined objecting to Viray's testimony about the results of the test performed by Chao would have been futile. " 'Generally speaking, a declarant's hearsay statement is testimonial if made "with a primary purpose of creating an out-of-court substitute for trial testimony." ' " (*People v. Tran* (2022) 13 Cal.5th 1169, 1196-1197.) Applying this test, several California courts have concluded reports containing DNA analysis like Chao's are not primarily testimonial because: "(1) they were generated by a lab technician pursuant to standardized procedures; (2) even though [defendant] had been charged with the crime, lab technicians such as [Chao] have no idea what their results might show, and DNA testing is routinely used to inculpate or exonerate those charged with crimes; and (3) the accusatory opinions came from expert witness [Viray], who was subject to vigorous cross-examination." (*People v. Barba* (2013) 215 Cal.App.4th 712, 742; accord *People v. Holmes* (2012) 212 Cal.App.4th 431, 438-439; *People v. Steppe* (2013) 213 Cal.App.4th 1116, 1126-1127.)

Our Supreme Court has also indicated that machine-generated data in the report of a nontestifying analyst does not implicate the right to confrontation "[b]ecause, unlike a person, a machine cannot be cross-examined." (*People v. Lopez* (2012) 55 Cal.4th 569, 583.) Though the record is not well developed in this respect, it seems the numerical likelihood of the bedsheet sample matching defendant's DNA profile was the output of the lab's computer software, which would not implicate the right to confrontation. Given all this precedent, defense counsel could have reasonably assumed that an objection on confrontation grounds would have been futile.

Because defendant has failed to show that his counsel could have had no satisfactory explanation for declining to object to Viray's testimony as inadmissible

7

hearsay or on confrontation grounds, defendant has failed to establish ineffective assistance of counsel.

## B.     Evidence of Motive

Defendant next contends the trial court abused its discretion by preventing him from introducing evidence that defendant's father had decided to give him a share of a house previously promised solely to the victim's father, creating a motive for the victim's family to fabricate her allegations. The People respond that the trial court properly excluded the evidence and, in any event, defendant was not prejudiced by the exclusion. We conclude the trial court did not abuse its discretion by excluding the evidence.

### 1.     Factual Background

Defendant sought to introduce evidence that his father had originally announced his intention to give a house to the victim's father but then, sometime in the four years between making the plan and the victim making her allegations, defendant's father changed his mind and planned to give the house to both the victim's father and defendant. This could have created a motive for the victim's parents to fabricate allegations against defendant in order to discredit defendant in his father's eyes, which could cause defendant's father to revert to the plan to give the house only to the victim's father. But defense counsel acknowledged that he could only substantiate that defendant's father and the victim's father knew about the original planned transfer. As for who knew about defendant's father changing his plan, defense counsel told the trial court that he would ask the father before putting him on the stand. But defense counsel never provided any assertion that anyone knew about the father changing his mind. The victim's mother, who first spoke with police about the victim's allegations, had already testified that she knew nothing about any transfer of the house to her husband.

The trial court considered this theory "extremely attenuated," especially because defendant's offer of proof did not establish when defendant's father had changed his mind or whether the victim's parents knew about the planned transfer or the change.

Accordingly, the trial court excluded the evidence, finding it had very little probative value that was substantially outweighed by the probability it "would create a substantial danger of undue prejudice, of confusing the issues or of misleading the jury, as well as necessitating undue consumption of time." Defendant did not call his father as a witness.

### 2. Legal Background

Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " '[T]he latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.' " (*People v. Ayala* (2000) 23 Cal.4th 225, 301.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*People v. Clark* (2011) 52 Cal.4th 856, 932.) A trial court does not abuse its discretion under Evidence Code section 352 unless it rules in an arbitrary, capricious, or patently absurd manner. (*People v. Johnson* (2019) 8 Cal.5th 475, 521.) Defendant has not met this high bar here.

### 3. Analysis

Evidence of a motive for the victim's parents to pressure her into fabricating allegations could have been relevant. Likewise, evidence that the victim's mother lied when she said she knew nothing about any potential transfer of a house would have been relevant impeachment. But defense counsel's offer of proof did not include such facts. As the trial court noted, defense counsel had not offered any testimony about when the father had changed his mind or who the father had told about changing his mind.

9

We agree with the People that testimony on this subject could have turned into a trial within a trial about defendant's father's plan for the house, who knew about the plan, and the credibility of those individuals. This could confuse the issues, mislead the jury, and consume undue time by turning the trial away from the testimony and credibility of the victim and defendant to this side issue. (See *People v. Verdugo* (2010) 50 Cal.4th 263, 291 [affirming exclusion of evidence whose introduction would have entailed "a lengthy evidentiary detour into a matter that was only marginally relevant and might well have confused the jury"].) And, given that the side issue would be relevant only if the defendant's father happened to testify to facts unknown to defense counsel at the time he made his offer of proof, we agree with the trial court that any relevance was extremely attenuated. Accordingly, we cannot say the trial court abused its discretion by excluding this line of questioning.

## C.    *Ineffective Assistance for Not Objecting to Prosecutorial Misconduct*

Lastly, defendant contends his trial counsel also performed ineffectively by failing to object to the prosecutor's remarks in closing argument about the victim's lack of motive. The People respond that the prosecutor's remarks were not improper and, in any event, they did not prejudice defendant. While we agree with defendant that the prosecutor's remarks were improper, we conclude defense counsel could have made a reasonable tactical decision not to object. Accordingly, defendant has not established ineffective assistance of counsel.

### 1.    *Factual Background*

In closing argument, amid arguing that the victim's and her mother's testimony was more credible than defendant's, the prosecutor argued that the victim and her mother had no motive to lie and that the process of reporting the abuse was instead unpleasant for the victim. Specifically, the prosecutor stated:

"And when you think about those things and you compare [the victim], her mom, and the way that they talked about these things, there's no motive for them to lie. There's

10

no motive for [the victim] to say these things about [defendant], because when people lie, whether it's an adult or a child, they do so for a reason. You lie to get out of trouble. You lie for a benefit. There is no benefit to [the victim] to tell her mom that [defendant] put his penis inside of her anus.

"It's the opposite of a benefit, because we saw what happened. She told her mom. She had to go see her first doctor, who called the police. Then she had to go to the BEAR [Clinic]. She had to have an invasive exam where her genitalia is looked at, her anus is looked at. She had to talk to police officers. She had to go through an interview. She had to come in to testify. There's no benefit. It's not cool at eight years old to say, [defendant]'s penis was in my butt. That doesn't give you street cred. on the playground, doesn't give you clout. There's no motive.

"And when I sit down once I'm done with my comments here, I'm going to listen to defense counsel and see, because if they're asking you to find the defendant not guilty, they are asking you to find that [the victim] lied, and if they are doing that, there should be a reason. There should be a motive. And from what I've seen in the evidence, there is no motive, no motive for [the victim] to make it up.

"And I would suggest that you listen to defense and see, see what motive there is that's not speculation, that's not a guess, but actually within the evidence, within the four walls of this courtroom, and I don't think there's going to be one. And if they come up with one, I'll address on it my rebuttal."

Defense counsel did not object, and the prosecutor moved on to discuss the credibility of other witnesses.

> 2.     *Legal Background*

A number of cases have criticized prosecutors who successfully argue for the exclusion of evidence based on a lack of relevance but then argue in closing that the lack of the excluded evidence is relevant to the jury's consideration. For example, in *People v. Varona* (1983) 143 Cal.App.3d 566, the defense sought to introduce evidence the

11

victim had previously pled guilty to prostitution, but the prosecutor successfully argued for the exclusion of the evidence. (*Id.* at p. 568.) In closing argument, the prosecutor then argued that there was no evidence the woman was a prostitute. (*Id.* at p. 569.) The appellate court concluded the prosecutor had committed misconduct, reasoning: "We agree that, in a proper case, a prosecutor may argue to a jury that a defendant has not brought forth evidence to corroborate an essential part of his defensive story. But we know of no case where such argument is permissible except where a defendant might reasonably be expected to produce such corroboration. Here the prosecutor not only argued the 'lack' of evidence where the defense was ready and willing to produce it, but he compounded that tactic by actually arguing that the woman was not a prostitute although he had seen the official records and knew that he was arguing a falsehood. The whole argument went beyond the bounds of any acceptable conduct." (*Id.* at p. 570.)

In *People v. Castain* (1981) 122 Cal.App.3d 138, the appellate court reversed a conviction for battery upon a police officer and resisting arrest after the prosecutor successfully argued for the exclusion of a second incident where the officer had allegedly used excessive force and then argued to the jury that the evidence showed only one such incident. (*Id.* at pp. 140, 146.) The court referred to this as "the prosecutor's obvious misconduct." In *People v. Daggett* (1990) 225 Cal.App.3d 751, the court reversed convictions for four sexual offenses against a child, in part because the prosecutor "unfairly took advantage of the judge's ruling" excluding evidence by "ask[ing] the jurors to draw an inference that they might not have drawn if they had heard the evidence the judge had excluded." (*Id.* at pp. 754, 758.) In *People v. Roberts* (2021) 65 Cal.App.5th 469, the appellate court considered it clear misconduct to say there was no evidence as to whether the victim had gone to the hospital after an incident of domestic violence after successfully arguing for the exclusion of evidence the victim had been arrested after the incident and could not have gone to the hospital. (*Id.* at p. 481.) Specifically, the court reasoned that "[a]fter convincing the trial court to exclude

evidence of the victim's arrest on the basis that its minimal relevance was outweighed by its prejudicial effect, the prosecutor then took unfair advantage of that very ruling by implying that what the victim may have done after the incident *was* relevant." (*Ibid.*)

Claims of prosecutorial misconduct are, however, subject to forfeiture. "In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review." (*People v. Alfaro* (2007) 41 Cal.4th 1277, 1328.)

*3.    Analysis*

As an initial matter, we agree with defendant that the prosecution took unfair advantage of the trial court's ruling excluding evidence of a potential motive by subsequently arguing to the jury that defendant had failed to offer any evidence of motive. Though the offer of proof in this case was less definitive than the evidence excluded in the cases cited above, we conclude the same principle applies: The prosecution cannot stop the defense from seeking to introduce evidence based in part on that evidence's lack of relevance and then emphasize the lack of that evidence to the jury as relevant to their decision.

But here we must decide whether defense counsel performed ineffectively by failing to object to this misconduct and request the trial court to admonish the jury. " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925.)

Here, defense counsel made a tactical decision to address the victim's motive to lie in his own argument. Beginning early in his argument, defense counsel argued that the lack of motive fit his theme, that the victim was a child whose story changed and grew each time she interacted with a new group of adults trying to prove defendant had committed a crime. Defense counsel emphasized only one of the questioners was a

13

forensic interviewer trained to avoid leading questions, which can "put a story in a child's head." Depicting the victim's story as spiraling out of control from its beginning as a small lie or misunderstanding about an interaction with defendant was a reasonable approach. Defense counsel would have expected the jury to wonder why the victim would lie, whether the prosecutor mentioned it or not. He had prepared to answer this question, and stopping the prosecutor from discussing motive would not have assisted his strategy and could have looked suspicious to the jury, especially given the prosecutor's discussion of motive took up only one page, two-thirds of the way through the 30-page transcript of her argument.

We conclude defendant has not established that defense counsel acted unreasonably by deciding not to object to the prosecutor's argument about the victim's lack of motive.

### III.  DISPOSITION

The judgment is affirmed.

/s/_____
Wiseman, J.*

We concur:

/s/_____
Mauro, Acting P. J.

/s/_____
Mesiwala, J.

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.